The Honorable Judge of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh with your attention to the court of custody. The Honorable Judge of the United States Court of Appeals for the Fourth Circuit. If I may begin. Good morning, and may it please the court, Andrew Sacali appearing on behalf of Appellant Savino Braxton. Your Honors, I have briefed three issues in this case. I'd like to focus the bulk of my argument this morning on issue number one, which is the issue of whether the district court improperly involved itself or inserted itself into what ultimately became the guilty plea in this case. To briefly recap the facts of the morning, Mr. Braxton entered his plea of guilty. He appeared for trial in... Can I just, before we get too far into this, I think I understand the dynamics and probably the dynamics between you and your client, and I don't want to have that compromise. But, if you succeed on this point, he gets to withdraw his guilty plea, start over, and go to trial with a 351 filed. He'll get, if convicted, 20 years mandatory minimum. He now has 11 and a half years. Even if he succeeds on his drug quantity, he'll get more than he has now. Maybe not 10 years, I guess he gets 10 years if he were to succeed, but you know the evidence on the drug quantity. My question is, is this a victory that he wants now, a Pyrrhic victory where he could lose the war? Your Honor, I only came into this case as appellate counsel, so I was not privy to all of the discussions that Braxton would have had with his trial counsel. What I can tell the court is that, Pyrrhic or not, this decision of whether to take the case to trial is a right which is reserved... No question about it. I just want to have your client and you understand that as you stand here and ask the court to vindicate what you contend is an error, you end up bringing on to yourself more harm or more exposure, more risk than you otherwise have right now. I mean, it's a big risk and if he understands that and you understand that, I'm going to say no more. But I want to be clear on that because if you were to win this, it seems to me the remedy you're asking for is to have him withdraw his guilty plea and have a new Rule 11 or go to trial. But the government's withdrawal of the 351 was part of that deal and if he's going to get out of that deal, the 351's lying there. And he has a serious drug conviction which will take his mandatory minimum if convicted to 20 years. I'll say this, Your Honor, without getting too far into the attorney-client... Don't get too far. I don't want you to compromise your relationship with your client. I will say this, I'm certainly aware of the issue the court has raised. It is one which my client, in fairness, I think was made aware of by his trial counsel, by government counsel, by the trial judge, as well as by me during the proceedings here. So we're walking into this proceeding with our eyes open. Go ahead and argue your point. Okay. When Mr. Braxton appeared for the morning in which he ultimately took his guilty plea, initially, government counsel actually requested to put the final plea offer on the record. That was put on the record, the trial judge engaged with Mr. Braxton, made sure that... Why were they doing that? Do you know anything beyond what's in the record? There was a conference in Chambers or something, or at the bench, right? Without the government present. Correct. And then they got into this proposed plea offer. I mean, everybody in there knew what Rule 11 says. Sure, they all said they did. Everybody thought that it was a good deal that he should take, except him. He was the only one that mattered, I guess. It's almost as if they were asking the judge to put some pressure on him. Your Honor, I said... Your predecessor said, Your Honor, what you've done is fine. You haven't contravened Rule 11. The judge asked that. And Mr. Purcell said that, and Mr. Tuminelli said that. It's an interesting situation, or a weird situation in the context of criminal proceedings. I think in a lot of these cases, this Court has often, in the course of reversing these cases on Rule 11 type errors, typically says something along the lines of, we have no doubt the District Court was acting in the best of intentions. Well, I think that would apply here. And I don't think that. I think that's right here, too. Everybody would agree that. The District Court's trying to help. Help with the defense law. You know, this was a good deal to get the government back off this 20-year mandatory amendment. You need to take it if you can. I think the plea offer was put on the record at the beginning of that proceeding. Well, the plea offer was put on the record. What difference does it make if you put the plea offer on the record? I mean, I don't know that he understood he had a plea offer. That comes up later. But they had it in writing, and it looked like everybody signed it at that point except him. And the judge did have some duty to go over the agreement with him so we understood what the agreement would be, right? I don't agree with that intention, Your Honor. The Frey and Laffler essentially phrasing the opinion was constitutionalized, the guilty plea process to an extent it had previously been, and it's still a bit of a moving target what it requires. At minimum, it requires a defense attorney to communicate a plea offer, which was clearly established by both the government and Mr. Tuminelli at the beginning of the proceeding. It also requires the advice regarding the consequences of that plea offer versus trial versus other potential outcomes to be clearly communicated to the client, which was also done. But it says specifically that Rule 11 says the judge shall not participate or must not participate. It uses the word must, must not participate. I agree with that. And that Sonia case, of course, that came out after this. You cited it to us. It looks like it's pretty close to this, isn't it? I would say it's very close to this. And before that, there was a Bradley case of this. Again, I'm not up there. Both of them are from Maryland. They're pretty close. I would agree that both of those. What about your predecessor saying it's all fine? Invited error. Maybe it's invited error. I don't believe it. And this is a situation where, again, I think this goes back to the reason the plea was put. Mr. Braxton and my predecessor had, to put it charitably, a very rocky relationship, as evidenced throughout the various pro se pleadings and the ex parte conferences.  He wanted to get rid of it. And to some extent, it's possible my predecessor, in saying everything was fine, he knew and had an idea of what was best for his client. And this is fine may very well have been said, again, this is pure speculation, but could easily have been said, well, this is fine. Hopefully Mr. Braxton won't take this appeal and he'll be satisfied with the deal. Hopefully Judge Bennett will give the sentence he's looking for and this will sort of resolve in a sort of a happy ending. He said it was fine. I think the record says it to the contrary. In terms of invited error, it's a- He ended up getting 11 and a half years and he could have gotten 20 as a minimum, right? That's correct. And he could win this appeal and go back and change his mind and say, I don't want to withdraw the plea, right? Well, I think once this- So if we vacate the sentence, and Sonja, what the court did, vacated the sentence and gave him the right to withdraw the plea, and I don't know what he did, but if we do the same thing here, and I think that's what you're asking for, I don't know, maybe you want the conviction vacated, but if we vacate the sentence and give him the right to withdraw the plea, he could go back and there we send it back for a different judge. He could go back and say, I've changed my mind. I don't want to withdraw the plea. I'll stay where I am. Then he's got himself a- Where does that take us? I mean, that's where we are now. If he goes back and takes the plea and he wants to get rid of the plea, doesn't he? He does. Well, what relief are you asking for exactly? Is it the right to withdraw? The relief is to vacate the sentence and vacate the plea, that there was a Rule 11 error. That's not what we gave Insonja. That's not what happened. Correct. We vacated the sentence and sent it back with the right of the defendant to withdraw the plea. We left the conviction and plea intact. We, the court, I wasn't on it, but that's what happened. Insonja, I thought that's what you were asking for. If you want this conviction vacated as well, then that gives us a way with the plea. And then you're going back to square one, really. My question in response to Judge King's observation about Insonja is, if all you want is to go back and re-plea to save this plea, you've got the plea. And you've got a sentence, which is at the low end. So it's just process for process's sake, almost. It seems to me you would have to want more than just have what you already have if the appeal has any meaning. The crux of this appeal is that Mr. Braxton wanted a trial in this case and ultimately did not receive that trial because of the district court. So he wants to go back and have a trial. He wants to go back and have the district case. Have a trial. Have a trial. Now, whether he goes back and... And he could get that if we give the same relief we gave Insonja. He could get his trial, but it would be a two-step process. If we vacated the sentence, gave him the right to withdraw his plea, he goes back, tells the judge I want to withdraw my plea, he's withdrawn, and now we call the jury. We have a trial. And then they roll the dice, which Judge Wilkins pointed that out. In his concurrence, Insonja, he said the defendant can make a bad decision and roll the dice if he wants to. He might get acquitted, right? And then we all walk away. As Judge Wilkinson said, there's a lot of reasons defendants go to trial, whether it's a belief in their innocence, whether that's rational or not, whether it's a desire to simply put the government to its proof. There's a lot of reasons a defendant would wish to. Maybe your guys are just playing with the system. I'll address that. I'm not saying that the record reveals that, but they suggest that that's a possibility based on what the concurrence Insonja did. Well, it seems to me Judge King's clearly right under Insonja, but you had that election, but you may have already made that election on this appeal. It seems to me, I'm looking now at your brief, you're asking for a new trial. And that's what Mr. Braxton has wanted from the get-go in this case. I mean, he litigated pretrial motions. He was prepared to proceed without an attorney if necessary because his appointed or others. Trial attorney was not willing to pursue a defense that he thought was his best chance. Whether or not Mr. Braxton's right or wrong in that. He may have been gaming with the system, too, and the district judge was getting concerned that that might be happening, too, because of the back and forth on having legal representation. Mr. Braxton was. He's clever, and he's articulate. He is clever. I would agree with that, Your Honor. I would also agree that he, from day one, has had an issue. If you go back and look at the entirety of all the different proceedings, he's had an issue with the drug quantity in this case. But that was based on a legal misconception, right? He knew heroin well, and he said there isn't that much heroin there. It's basically a mix. And, of course, the statute includes the mix, and he couldn't get over that, I don't think. Isn't that what your understanding was? Whether he could or couldn't, the decision of – He's entitled to trial. It's no question. And he can be entitled to trial even if the large prediction is he's going to get a much worse sentence. That's very clear. To be clear, just on this gamesmanship point, there's no suggestion that the district court was sort of sanctioning him for gamesmanship by taking away his right to trial, right? There's no suggestion. It seemed to me from reading it that the district court really did have his best interests at heart and that we're not looking at a district court judge who thought, you know, I'm really sick of this, take the damn plate. The district court judge, I think, was extraordinarily frustrated with Mr. Braxton, but I don't believe that the sentence in any way was indicative of the district court believing there was gamesmanship. If there were gamesmanship at stake, Mr. Braxton's ultimate sentence of 138 months was really quite close to his repeated desire for a 120-month sentence. What I would suggest is the fact that we're here on this appeal, staring at the brink of potentially a remand where he faces, as we've all discussed this morning, 240 months minimum sentence suggests that this isn't gamesmanship, that Mr. Braxton has a genuine desire to have his day before a jury and raise these issues that he thinks are important, and the district court, by involving itself in the plea, words like put your heads in a buzzsaw, don't put your head in a vice, things like that, denied him that, and that's the reason we'd ask for a new trial. Thank you. Mr. Purcell. Good morning, Your Honors. John Purcell, a senior U.S. attorney from Maryland. I was not the original prosecutor on this case. I was the prosecutor who did the motions. Actually, when the defendant, who had absconded for two years or more, was found, I was assigned to the case and did the motions hearing, and I guess the only one of us was a witness to this, though we're witnesses, all of us, to what happened because of the record. First, your question about the issue of the sentence, your honor, reflecting any sort of exasperation. Actually, the opposite is true. Judge Bennett, I asked for 180 months, or recommended, I don't usually specify, but I said something towards the high end because of his record. The defendant had been in jail for 17 years, a federal sentence for heroin trafficking, had just gotten out, got arrested again for this, didn't want to go back to jail, and 18 months to him, all of us, is a long time. And he wants his 10 years. He said as much to me, it's on the record, where he said, as I told Mr. Purcell, and I stated, sorry, you ran. But as to the sentence, when we got to sentencing, the defendant restated, first of all, that he had filed a motion to withdraw because he wanted to go to trial at this point because he realized he was going to get, was facing more than 10 years and could get up to 180. The judge, Judge Bennett, actually, this is actually part of the defendant's argument, actually reduced the defendant's drug guidelines by two levels because we were just 32 grams over the 1,000 grams necessary for one pill. It would have been a level 32. So we gave him a level 30, just did it. I think this is closer to a level 30. So he did that. And he's permitted to do that. So he actually went quite the opposite. He bent over backwards to sort of try to placate Mr. Braxton that he would get what he was, and he said why he did it. This case, I might say, though, is odd, certainly in the court, and all of us have seen and discussed between ourselves what success would mean for the defendant here. He clearly, in his motion to withdraw his guilty plea, asked for trial. His remedy is he went to trial, and he will get it. He said on the record he didn't want to agree to the plea agreement. He wanted a trial. He said that in his motion to withdraw, yes. He said he wanted to. I thought he said it that day. He said he couldn't prove the drug. He did, and I think I explained in the brief what he was thinking about. He was looking at this sort of nebulous and distracting term used by DEA, which is actual. He wanted to roll the dice, as has been put. You can find in the record just about anything you want in terms of what the defendant said that day. He said he wanted to go to trial. He said he wanted to plead. But what he said most and most often is that he wanted 10 years. But the question is whether the judge participated in the FLEAPers negotiations. Yes, that is the question. That's the question, and plainly he did. And you and Mr. Tuminelli know, Your Honor, you signed what you did. Let's talk about that. I tried to distinguish, Your Honor, Judge King, in my brief, how this case, and there's a major way that this case is different than either Bradley or now Sanya, and it's this. The defendant, if you look at the beginning of the trial, beginning of the transcript, we put the plea on the record, which I think invites more problems than not, but we have to do it to make sure there's a communication. I've already had a case reversed because there wasn't a communication that was found of the plea. So we do that. You put the final offer on the record? We have to make sure the defendant Is that a Justice Department policy? Is that something you do? Well, it's what you do because of Fry and Laffler. Is that a Justice Department policy? No, it's not a policy. Is that nationwide? No, Your Honor. I wouldn't think so. I mean, I probably could trust lawyers, defense lawyers, to communicate with their clients. That's what it's supposed to be between you and the defense lawyer. I know, but The defense lawyer needs clients. You'll see, and I've seen, and I've had a case on a 2255 vacated because the defendant successfully argued that his lawyer never told him about the plea. And it does happen, unfortunately. I didn't believe that the lawyer didn't, but her records were not that good. My experience going back is that the lawyers often put a lot of things on the record during these hearings, taking pleas and sentencing, just in order to make sure everything's protected. Even the Rule 11 has a lot of that. We're always looking to the 2255. As is Mr. Braxton, all of his pros say, pleadings will come back in the 2255. Someday I'll be gone. But the difference between Bradley and Sania is what I wanted to mention. And the difference is this. Just after we did that Fry notice, we'll call it, the judge said, fine, you understand, good. Went over the terms, bring in the jury. The defendant, excuse me, I'd like to renew my motion. And this is where the case is different. There was no Faretta issue. There was no self-representation issue in Braxton, I'm sorry, in Bradley or in Sania. And that really distinguishes this case in a major way. I thought he, I think the sequence is important. But as I read the sequence, the Faretta motion is over, it's done with. It's untimely denied. But before any of the problematic stuff, you didn't need to get back into Faretta. No, no.  Yes, he did. And I'll tell you why, Your Honor. Because, and the judge, that was his first response. The defendant said, I want to renew my Faretta motion. I want to represent myself. I don't want Mr. Tuminelli did it. I didn't like the way he handled himself at the motions hearing we just had. And the judge said, no, no, no, we've been through that. And so the defendant said, well, I'm renewing it. I'm renewing it right now. And this is the first time the judge, actually it wasn't the first time, the first time the defendant was called for stalling was at the first motions hearing, at the conclusion of which there was a long in-camera proceeding at which the defendant said, I'm completely happy with Mr. Tuminelli. I like him. I love him. He's done everything I want for me. I just don't like this tenure. At that point, a tenure plea he didn't like. But at that point, the judge now, as he said, well, I have to now go into, first he tried to argue him out of it. But Judge Bennett said, well, if you're going to want to represent yourself, I have to do now, make sure that your decision is knowing and intelligent. But it doesn't, you don't. I mean, is there any authority for the idea that that Feretta inquiry includes, I need to make sure that you are not unwisely turning down a plea offer that I think you should take? Yeah, actually it does. The court looks at United States v. Gallup, which I cited in my brief, and another case which I didn't cite but I can give to you now. You're not allowed to represent yourself if the judge thinks you would be better off taking a plea. That's the rule. Judge has to make sure, under Feretta, and as adopted by Gallup and United States v. Hiltman case from the circuit, that I have the site if the court wishes. So you're saying those cases overruled Rule 11? No. Well, Rule 11 says the judge must not participate in the plea negotiation. No, it's a separate inquiry. It's an absolute prohibition on participation in the plea negotiation. The tension between those is obvious. But Feretta is very clear. And the Fourth Circuit and Gallup particularly said that the court has to make sure that the decision is knowing and intelligent. And it also says it means that the decision to represent yourself is knowing and intelligent. And that includes inquiring of many things, including that the defendant understands the charges and the penalties. And that's right out of Gallup, those words, charges and penalties. But is there anything that says the district court needs to assess for himself and then convey to the defendant the merits of taking a plea deal? Well, the judge has to make a determination that it's intelligent. And what was going on here is that the defendant kept saying against the ‑‑ Why does this happen all the time? Why don't we see transcripts like this all the time? Judge is saying, look, under Feretta, I really need to take a good look at this plea agreement and convince you that you should take it. I don't think that's what the judge was doing. What he was doing is making sure that the defendant understood that what he was staking out his claim for a trial on, which was the drug quantity, that he understood that it wasn't intelligent. And the judge saw, everybody saw that what the defendant was saying is I'm going to prove I have less than one kilo based on the idea that this says actual weight here instead of the weight of the entire substance. It's not intelligent. It was contrary to intelligence. I will let this go in a minute. But I understand that your right to sort of forego, that if you want to forego your right to counsel, that forfeiting of that right has to be knowing and intelligent. Similarly, if you want to forego your right to a jury trial, that has to be knowing and intelligent. But does it have to ‑‑ do we screen for whether if you want to exercise your core right to go before a jury, the judge has to determine that that is knowing and intelligent? I would have thought it has to be knowing and intelligent if you don't want to exercise your right to a jury trial. No, no, it's not about the right to a jury trial. It's about the right to represent yourself. That's what the ‑‑ I understand that. But I'm saying this guy is saying I want to go to trial. And it sounds like you're saying his decision not to go to trial has to be knowing and intelligent. But that's what the judge had to figure out. And I don't get that. No, I'm not tying it. Maybe it's just a new one. You understand what I'm saying? I do. I do. But what I'm saying legitimizes the inquiry that the court made here was the obligation the court has under FARETA. Not to stop the defendant from exercising. Actually, he said, okay. The last thing he said before the defendant went back to talk to his lawyer was, do whatever you want to do. I've done all I can to express to you what the weight issue is. And he nailed down that the only issue the defendant has was the drug weight. It wasn't. It was completely not an intelligent choice the defendant was making in that regard. That is, he was making his decision on a false premise. That is, the false premise is that he could demonstrate that there was less than a kilo. So the FARETA rights, at the end of the day, you're saying the FARETA right is limited. You have a right not to represent yourself unless you're turning down, you're making an unintelligent decision to turn down a plea offer. Because I don't, that doesn't happen to me. Well, in this case, that's what it is. But the point is, of FARETA, is that the decision be knowing and intelligent. The point is, I'm really trying to make, and I understand your frustration with me. Why we don't see this all the time is because all of our defendants are not Mr. Braxton. And Judge Niemeyer said something about the rationalization of this. There's nothing rational about this case. This defendant, he's gaming us today. He's still, this is just his, he's got nothing better to do. He is still gaming the system. He was gaming the system that day. He was gaming the system at his motions hearing. And, in fact, Judge Bennett specifically said, she said, let the record reflect. I have it here. I don't need to read it. You can read it. But let the record reflect that if there's ever been a defendant who gamed the system, this was at sentencing where the defendant now was trying to withdraw his plea agreement, you're it. So the record does reflect that. And the defendant is doing that. And it's important because in Sonia, in the concurring opinion by Judge Wilkinson, Judge Wilkinson noted that. There's another case I mentioned named Hilton where a defendant made a Rule 11 request, not a Rule 11 request, but a request to represent himself. And that's 701 Fed 3rd 959, two years ago. And that was Judge Keenan who wrote the opinion. And she specifically found, the court found specifically, that that defendant was using his alleged right to represent himself as just a stall or delay tactic. And that's something else that the court has to determine when it's making its credit decision. Is this a genuine request to her or is this guy just trying to kick the can down the line a little bit so he can talk to the prosecutor some more and get the ten years that he thinks he was offered from the beginning? And apparently he was offered from the beginning before he took off for two years. Those are things that Gallup says the court has to inquire about. Is this even a genuine request? I'm sorry, just one last question. I'm back on the sequencing. So on page 252, right, the judge says, I'm denying your request because it's not timely, period. And that's after, you know, much discussion. So at that point, what's the justification for continuing to talk about the plea? The defendant continued to say that he was re- and I think the judge wanted to demonstrate that because the defendant himself articulated a new reason for the self-representation, because the judge pointed out, Judge Bennett said, no, we already visited this at the last motions here and we had this whole discussion. No, no, this is after all of that. I understand. And there's a bunch of discussion about that, like, did he already? And now in the morning of- This thing is not timely, and on that grounds, I'm denying it. So I don't understand why, even accepting sort of your premise about what Feretta requires, why the judge is required to continue talking about the advisability of a plea agreement. Well, I think in the judge's mind, he was thinking about an argument being here someday where the judge stopped the inquiry upon a finding that simply that it wasn't timely when the defendant was articulating a reason that had recently surfaced, that is based on the last motion. And the defendant articulated a new reason that hadn't been raised before. Even on your understanding of Feretta, right, where there is some tension between Feretta and Rule 11, wouldn't we at least want judges to drop it once they've already denied the Feretta motion on some other ground rather than creating that tension unnecessarily just because they feel like deciding a motion on more than one ground? I think it would have been very difficult. I know Mr. Braxton, and he was not, if you look at the record, he wasn't relenting. The defendant and the court basically got into a position where the defendant kept restating he wanted to represent himself and why, and the court did just as you said. I've decided this, it's not timely. But then I think wanted to explore this thing more with Mr. Braxton, which is what he did. But again, I just want to point out another difference between the sets of cases, this case and those other two cases, and I see them in my sum up, is that not only was there no self-representation issue in the other two cases, Sonia and Bradley, but in those cases, one of the reasons it was found to be a violation of Rule 11 is because there was this implied benefit aspect of the discussion by Judge Davis in one case and Judge Massetti, you're right, they're both from Maryland cases, in the other. And in both cases, the defendants got hammered at the end. Judge Davis imposed a sentence of life plus 20 in one case after inferring that if you do this, I'll do better for you. But most important is that, besides the self-representation issue, is that the whole thing was initiated here by the defendant. And my real argument to the court is that not only is the Ferretta thing set this apart, but we don't even have to go that far. This defendant was never genuine. He was always insincere in these efforts. He was just trying to get what he wanted, as Judge Wilkinson pointed out in his concurring opinion. He almost says that. He says, I want my 10 years. That's all I want. He's going back and forth. He said at one point, if we had 10 years, we wouldn't even be here. Right. And that's it. And I know the first thing that will happen, he'll say, can I get 10 years if he wins this case? So thank you very much, Your Honor. Any questions? I'm sorry that I'm sitting down, but I see my time is up. Thank you, Mr. Ferretta. Thank you. Yeah. Mr. Braxton's wanted 120 months or a 10-year plea in this case. When he didn't get it, he decided to, as Judge Wilkinson said, roll the dice and go to trial. That's an acceptable position. I want this plea. If the government is unwilling to meet me on those terms, I'd rather take my chance as a trial. That doesn't mean he didn't want to go to trial that day. It just meant that if the government had turned around that day and said, well, you can have your 120 months, he would have jumped at that opportunity. When he didn't have that opportunity, he decided it's a risk-benefit proposition at that point, and that might not be the decision I might make in that situation, but that's not my decision to make, and it also wasn't anyone else's decision to make that day but Mr. Braxton. I did want to touch on one point. The government discussed that the district court judge felt the need or needed to figure out what the issue was with the wait and sort of delve into this idea of, well, what's keeping up the plea here? That is, quite frankly, not the role of the district court at that point. The district court, I thought the district court was trying to communicate, and this may not be fair to the defendant or to the system, but I thought the court was trying to communicate that if you go before a jury, the standard is going to be different than if you go before me, where it's just a preponderance of the evidence, and I can find the wait favorable to you and give you a greater benefit than you would go for a trial. That's my message, I thought, a subliminal message. He talked about preponderance, I think, once, and I don't know if that's a correct dialogue. It may be giving this man advice as to how he makes his choice. The jury is going to get the issue, and I'm going to get the issue, and I can handle it better because I know I do the sentencing and sort of suggesting you're going to get a fair sentence. And I think that relates back to the government's point about an implied benefit, and that is certainly an implied benefit in this case. No question. It could maybe be read that way, but at the same time, it looked to me, the defendant was negotiating for his ten years, and basically, even after the Beretta stuff, he comes back and says, I have all this trouble with Mr. Tuminelli, and all I want is a ten years. If we had ten years, I wouldn't be here. So he's poking in every different direction that he can, and that's why I say I thought he was pretty clever. He knows more than a lot of lawyers. But if he can't get his ten years, he wants his trial because he thinks he can win on the weight issue, and then he would get ten years. He'd be looking at a ten-year mandatory minimum based on the weight, and I think that's what this continually comes to. That was his angle to try to get the ten years. I think the evidence in this case is not even estimated weight. They actually weighed the samples, and so it's going to be pretty hard to get under the kilogram if the government chooses to prove all those transactions. And if that's ultimately Mr. Braxton's decision, again, it remains his decision, uninterfered with Tuminelli. It does, and just to get back to the relief in this, if the court stepped over the line in this case, and it's a dicey question because it is a little different from some of the others, but if the court did step over the line, it seems to me the remedy you're asking for and the election that's being made is you want a new trial. You don't want to do that plea. Mr. Braxton wanted a trial in this case.  Unless the court has any other questions. I understand you're court-appointed. I want to express our appreciation and recognition of that fact. Of course, you know it's very important for us to have your representation and input. And although Mr. Braxton probably could have handled himself, too. We'll come down and greet counsel and proceed on to the next case. Thank you. All done.
judges: Paul V. Niemeyer, Robert B. King, Pamela A. Harris